1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                              )
In re:  PARK WEST GALLERIES, INC.,        )        MDL No. 09-2076RSL
MARKETING AND SALES PRACTICES  )
LITIGATION                                              )
_____)
                                                              )        ORDER GRANTING CELEBRITY'S
THIS DOCUMENT RELATES TO:             )        MOTION TO DISMISS
                                                              )        SECOND AMENDED COMPLAINT
Bohm v. Park West Galleries, Inc.,              )
Case No. C09-1178RSL.                              )
_____)

   This matter comes before the Court on "Defendant Celebrity Cruises Inc.'s Motion to Dismiss Second Amended Complaint." MDL09-2076, Dkt. # 84; C09-1178RSL, Dkt. # 57. Defendant seeks dismissal of all of the claims asserted against it in the Second Amended Complaint ("SAC"). Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the argument of counsel, the Court finds as follows:

**A. MATTERS OUTSIDE THE PLEADINGS**

   In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  The Court may, however, consider documents referenced extensively in the complaint, documents that form the basis of plaintiff's claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted. United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003).

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs agree that the Court should consider the Declaration of David Banciella and the Cruise Ticket Contracts submitted by defendant in the context of this motion to dismiss. The Court has, therefore, considered the documents submitted by Celebrity when determining whether the complaint, taken as true and construed in the light most favorable to plaintiff, gives rise to a plausible inference of actionable conduct. See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

**B. SHOTGUN PLEADING**

Defendant argues that the entire SAC should be dismissed because each count "expressly incorporates all of the allegations contained in the prior counts . . . ." Motion at 2. In making this argument, defendant does not identify any rule of civil procedure or pleading standard with which plaintiffs have failed to comply. Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Having reviewed the allegations of the SAC, the Court finds that the incorporation by reference of all preceding paragraphs does not adversely impact the clarity of the pleading or justify dismissal in the circumstance presented here. The SAC provides 'fair notice' of the nature of plaintiffs' claims against defendant and the 'grounds' on which the claims rest. See Twombly, 550 U.S. at 555 n.3.

**C. STATUTES OF LIMITATION**

Defendant argues that all of plaintiffs' claims are barred by the applicable statutes of limitation. Plaintiffs allege that they purchased artwork on a Celebrity vessel in 2002. SAC ¶¶ 148-49. The claims against Celebrity were not asserted until July 24, 2009, well after the applicable limitations periods had run. Plaintiffs allege that they had the work they purchased during the Celebrity cruise appraised by Park West (SAC ¶ 153(c)), and were assured that the art was worth more than they had paid for it (SAC ¶ 153(k)). Plaintiffs state that they continued

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT   -2-

to believe that the appraisals were valid until January 2008 when plaintiff Bohm attempted to sell some of the artwork he had purchased from Park West. After the New York times published an article entitled "Art Auctions on Cruise Ships Lead to Anger Accusations and Lawsuits," plaintiff Bohm contacted defendant Park West and filed suit. Based on these facts, plaintiffs argues that their RICO claim against Celebrity is timely under the discovery rule.

**1. Discovery Rule**

The applicable statutes of limitation began to run when plaintiffs knew or should have known of the injuries that underlie their causes of action. Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001). Plaintiffs affirmatively plead that they did not suspect that they had paid too much for their artwork until January 2008. They allege facts, such as the contemporaneous Park West appraisals, which suggest that they took reasonable steps to safeguard their interests, and they identify a specific event which triggered suspicion and further investigation. Based on the facts asserted, the Court cannot conclude as a matter of law that plaintiffs were negligent in failing to discover sooner that defendants had sold them, or conspired to sell them, artwork at inflated prices.

**2. Equitable Tolling**

The discovery rule delays the start of the limitations period until the plaintiff knows or should have known of his injury. Equitable tolling, on the other hand, serves to extend the limitations period once the injury is apparent if plaintiff, acting with due diligence, "cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." Garcia v. Brockway, 526 F.3d 456, 465 (9th Cir. 2008) (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990) (J. Posner)). Plaintiffs claim that until 2008 they were unaware that they had paid too much for the artwork purchased from Park West. They do not assert that they were aware of their injuries but were unable to ascertain whether the overpayment was the result of wrongdoing or who caused the

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -3-

injuries. In fact, plaintiffs allege that, once they had reason to suspect the validity of the appraisals obtained from Park West, they were able to initiate suit in a timely manner.[1] Equitable tolling does not, therefore, apply.

### 3. Equitable Estoppel

A defendant can be equitably estopped from raising the statute of limitations as a defense if he takes actions or makes representations that prevent plaintiff from filing suit within the limitations period. The primary focus of the analysis is defendant's conduct/ misrepresentations and whether plaintiff reasonably relied on them to his detriment. See Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1121 (9th Cir. 2006).

Plaintiffs argue that defendant took steps to conceal the alleged scheme to sell overpriced artwork by (1) failing to reveal the scheme and/or the true value of the artwork sold and (2) limiting access to company documents. SAC ¶¶ 109, 166. Plaintiffs have not, however, alleged that they sought information from Celebrity and were rebuffed or that defendant took extraordinary steps to make information unavailable. In essence, plaintiffs argue that the same conduct that gave rise to their causes of action (selling overpriced artwork on cruise ships without revealing actual valuation) also supports equitable estoppel. But a plaintiff must point to "some active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is based" in order to trigger equitable estoppel. Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1052 (9th Cir. 2008), cert. denied, __ U.S. __, 129 S. Ct. 1997 (2009). For example, if defendant had stated that they would not assert the statute of limitation

---

[1] In the section of the SAC specifically dedicated to averments related to the statutes of limitation, plaintiffs allege that the information they needed to discover and prosecute their claims was under defendant's exclusive control and was not freely available to plaintiffs. SAC ¶ 166. Plaintiffs do not allege what steps they took to obtain information from defendant (in fact, they allege that they made no attempt to communicate with Celebrity after their suspicions were aroused) or what information, other than the fact of injury, was needed in order to ascertain wrongdoing and the identity of the defendant.

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT   -4-

as a defense or had promised to reimburse plaintiffs' losses only to renege the day after the limitations period expired, it might be equitably estopped.

In the circumstances presented here, however, plaintiffs would have the Court find defendant guilty of fraudulent concealment merely because it did not tell plaintiffs that they had sold them overpriced art. Such an argument merges the substantive wrong with the estoppel doctrine, effectively eliminating the statute of limitations. Id. (quoting Cada, 920 F.2d at 451). In the absence of a misrepresentation or conduct by defendant aimed at concealing the underlying tort alleged in the SAC or otherwise preventing plaintiffs from timely asserting their rights, equitable estoppel is not applicable.

**D. CONTRACTUAL RELEASE FROM LIABILITY**

Plaintiffs seek to hold Celebrity liable for its own culpable conduct. Defendant appears to concede that the release provisions in the Cruise Ticket Contract would not bar such claims. Reply at 3.

**E. CONTRACTUAL NOTICE AND SUIT LIMITATION REQUIREMENTS**

Celebrity's Cruise Ticket Contracts require passengers to provide written notice of a claim within six months of injury and to file suit on the claim within one year. Under federal common and maritime law, the contractual notice and suit limitation provisions in the Cruise Ticket Contract are enforceable if (1) the provisions were reasonably communicated to plaintiffs and (2) they are fundamentally fair. Wallis v. Princess Cruises, Inc., 306 F.3d 827, 835 (9th Cir. 2002); Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).

Plaintiffs argue that the notice and suit limitation provisions at issue here are "convoluted," are "buried in over a dozen pages of fine print," and require plaintiffs "to sift through pages and pages of legal jargon before coming across these important provisions waiving their legal rights." Opposition at 16. In Oltman v. Holland Am. Line, Inc., 538 F.3d 1271, 1276-77 (9th Cir. 2008), the Ninth Circuit considered a Holland America contract that is

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT   -5-

substantially similar to the one at issue in this litigation. The Ninth Circuit found that the contract satisfied both prongs of the "reasonable communicativeness test" and was therefore enforceable. Oltman, 538 F.3d at 1276-77. Plaintiffs make no attempt to distinguish the physical characteristics of their tickets or to show that the circumstances surrounding the receipt and retention of their contracts were materially different from the circumstances evaluated in Oltman. Having reviewed the Cruise Ticket Contracts submitted by defendant, the Court finds that the contents thereof were reasonably communicated to plaintiffs.

Plaintiffs' primary argument is that enforcement of the notice and suit limitation provisions would be fundamentally unfair because plaintiffs could not have discovered their injury until after the artwork arrived their residences. Plaintiffs allege that the artwork they purchased was shipped via the U.S. mail service, but do not provide any information regarding date of receipt. The Court will assume, for purposes of this analysis, that there would have been a delay of one or two months before plaintiffs received the purchased artwork.

In determining whether a notice or limitations provision is fundamentally fair, the Court considers whether the provision was intended to discourage or invalidate legitimate claims. Shute, 499 U.S. at 595. In the circumstances presented here, enforcing the six-month notice and one-year suit limitation requirements against plaintiffs would not be "so unfair . . . that they should be relieved of its constraints." Chan v. Society Expeditions, Inc., 123 F.3d 1287, 1296 (9th Cir. 1997). Defendant had sensible and non-punitive justifications for negotiating relatively short notice and suit limitation provisions: prompt notice would provide the cruise line an opportunity to investigate and adjust claims and liabilities arising out of a particular cruise would be cut off after a reasonable period. The contractual periods, while requiring diligence on a claimant's part, are not unreasonably short. Plaintiffs had ample time to evaluate the quality and provenance of the art purchased before either of the contractual periods expired. Because plaintiffs contractually agreed to the notice and suit limitation provisions, it

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT   -6-

was incumbent upon them to investigate potential claims after the artwork came into their possession.[2]

Plaintiffs did not provide timely notice and did not file their claims against Celebrity within the limitations period established in the Cruise Ticket Contracts. Their claims against Celebrity are therefore barred by the notice and suit limitation provisions in the Cruise Ticket Contract.[3]

**F. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")**

   **1. Adequacy of Pleading**

Celebrity argues that plaintiffs have failed to identify with the particularity required by Fed. R. Civ. P. 9(b) the individual phone calls made and/or letters transmitted by this defendant in furtherance of the fraudulent scheme described in the SAC. For the most part, defendant misconstrues the reach of Rule 9(b) in this context and ignores the allegations of the complaint.

Plaintiffs allege that Park West and Celebrity used the mails and/or wires to commit or assist in the commission of the sale of overpriced artwork in violation of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. Mail or wire fraud involves three elements: (1) the formation of a scheme to defraud, (2) the use of the United States mails or wires in furtherance of the scheme, and (3) defendant's specific intent to deceive or defraud. United States v. McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003). Most of the elements, such as the existence of an agreement and defendant's state of mind, may be plead with general, rather than

---

[2] The "fundamental fairness" analysis is theoretically and practically distinct from the discovery rule. The former applies to contractual limitations periods in admiralty and allows parties to allocate the risks of non-discovery as they see fit unless an injustice would result. The latter was created by the courts to ameliorate the harsh effects of legislatively-enacted limitations periods over which plaintiffs had no control.

[3] Because there may be other Celebrity passengers who are able to satisfy the contractual notice and limitation provisions, the Court will consider defendant's other arguments on their merits.

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT   -7-

particularized, allegations. "The only aspects of [mail or] wire fraud that require particularized allegations are the factual circumstances of the fraud itself." Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007).

Pursuant to Fed. R. Civ. P. 9(b), the circumstances of a fraud must be plead "with particularity" (Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004)), which means that the plaintiffs must state the time, place, and specific content of the false representations as well as the identities of the parties thereto (Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986))). Although plaintiffs are not able to provide the names of the individual Park West auctioneers who allegedly misrepresented the value of the artwork sold, they do identify the time, place, and specific content of the offending statements, as well as the relationship of the speaker to defendant. Plaintiffs allege that they relied on the following statements made by Park West employees leading up to or during the on-board auctions:

- the works purchased by plaintiffs were a "good" investment and
- the works would appraise for "many times" the price paid at auction.

See, e.g., SAC ¶ 153(e). These allegations provide a factual basis for the averment of fraud regarding valuation and are sufficient to allow defendant to prepare an answer.

Count IV of the complaint[4] also mentions misrepresentations regarding the provenance of the purchased work. There are no factual allegations in support of these asserted misrepresentations. It is not clear what, if anything, was said on these subjects, who said it, when they said it, or whether plaintiffs relied thereon. Plaintiffs do not allege that they were told anything about the provenance or authorship of the work purchased during the

---

[4] Although the fraud claim is asserted only against the Park West defendants, Celebrity is accused of aiding and abetting the fraud in Count V.

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT   -8-

Celebrity cruise. Their allegations center on overstatements of investment and appraisal value, not a lack of authenticity or the mis-identification of the author. In fact, there are no facts alleged from which one could even speculate, much less infer, that Erte is not the author of "Black Magic." The allegations of the complaint do not provide Celebrity with sufficient information to defend a fraud claim arising out of undisclosed statements regarding provenance or authorship.

For purposes of their RICO claim, plaintiffs have identified specific mail and wire communications made in furtherance of the scheme to sell overpriced artwork on defendant's cruise ships. For example, plaintiffs allege that they received certificates of authenticity and appraisals from Park West via the U.S. mail service. SAC ¶¶ 153(j)-(k) and 219(b). Although these communications did not directly injure plaintiffs, the use of the mail or wire need not be an essential element of the scheme in order to violate the mail and wire fraud statutes. Pereira v. United States, 347 U.S. 1, 8 (1954). A violation occurs if the communication "is part of the execution of the scheme as conceived by the perpetrator at the time." Schmuck v. United States, 489 U.S. 705, 715 (1989). It is enough if the continuing success of the fraudulent venture depends upon the transmission of items or information via the mails or wires. Id. at 711-14 (the successful transfer of title registration documents through the mails was an essential step in defendant's continuing odometer-tampering scheme because it ensured that the retail dealers on whose unwitting cooperation the scheme depended would continue to work with defendant). Because the scheme alleged by plaintiffs is a long-standing venture, the fact-finder could conclude that the transmission of certificates, appraisals, and other correspondence was necessary to ensure the continued viability of the enterprise.

To the extent Rule 9(b) applies to plaintiffs' allegations of wire and mail fraud, they have satisfied the heightened pleading requirements.

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT     -9-

### 3. 18 U.S.C. § 1962(c)

A claim under § 1962(c) of RICO requires allegations that defendant conducted or participated in the conduct of an enterprise through a pattern of racketeering activity. See, e.g., Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004). Simple involvement in the affairs of an enterprise is insufficient: to "conduct or participate in the conduct" of the enterprise's affairs, a defendant must have some part in controlling or directing the affairs. Reves v. Ernst & Young, 507 U.S. 170, 177-79 (1993). Celebrity argues that its business relationship with Park West – including its contractual right to a percentage of the proceeds from Park West's auctions – is insufficient to establish control over the enterprise's affairs. Goren v. New Visions Int'l, Inc., 156 F.3d 721, 728 (7th Cir. 1998) ("Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and the management of the enterprise itself.").

Without attempting to discuss the allegations of the SAC, plaintiffs simply cite to ¶¶ 2, 5, 37-55, 72, 126-41, and 187-216 in response. These paragraphs are conclusory (the cruise lines provided "willing and eager cooperation" as members of the enterprise, SAC ¶ 2, or jointly make "material decisions guiding the operation" of the enterprise, SAC ¶ 211), are irrelevant (Park West responded to the July 2008 New York Times article, SAC ¶ 131), or do not show that defendant operated and managed the enterprise's affairs (the cruise lines worked together with Park West to promote the on-board auctions and sales, SAC ¶¶ 5, 55, and 209) There are no allegations that Celebrity controlled any aspect of the marketing, sales, or business of the enterprise. The only possible exception is ¶ 50, which states that Celebrity selected the location and timing of the auction. This allegation of "control" is not sufficient, however. Determining which room can be used by a vendor at a particular time is integral to the operation of a cruise ship and does not indicate that Celebrity participated in the operation or management

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT  -10-

of the vendor's business. Having reviewed the allegations cited by plaintiffs and the remainder of the SAC, the Court finds that the allegations of "control" are insufficient. As alleged, the facts "do not permit the [C]ourt to infer more than the mere possibility of misconduct," and plaintiffs have failed to show that they are entitled to relief under § 1962(c). Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (May 18, 2009).

### 4. 18 U.S.C. § 1962(d)

Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(a), (b), or (c) of RICO. Although the agreement to violate RICO need not be express, the factual allegations of the complaint, including the words, actions, and relationship between the parties, must raise an inference that an agreement exists. Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 773, 774-75 (9th Cir. 2002). Once an agreement is demonstrated, all conspirators, whether or not they individually violate RICO, are jointly and severally liable for the acts of their co-conspirators. Id. at 775. See also U.S. v. Fiander, 547 F.3d 1036, 1041 (9th Cir. 2008) (evidence that defendant knew about and agreed to facilitate a violation of RICO supports a finding of conspiracy, even if defendant did not commit the substantive offense). Plaintiffs allege that Park West and Celebrity had a long-standing relationship, that their employees worked together to conduct almost every facet of the auctions, that they were aware of the efforts each made to attract passengers to the auction and to sell artwork, and that the cruise lines had a direct financial interest in every sale made on their ships. These allegations raise an inference of an agreement that is at least plausible. See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1056 (9th Cir. 2008) (inference of specific intent raised by allegations of knowledge, participation in certain activities, and profit motive).

### 5. Causation

Defendant argues that plaintiffs have failed to allege an injury compensable under RICO because the alleged use of the mails and wires occurred after plaintiffs purchased the art

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT  -11-

and could not, therefore, have caused the injuries of which plaintiffs complain.  Section 1964(c) provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Common law principles of proximate causation, rather than "but for" causation, apply to RICO claims.  Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 266-68 (1992). Individuals whose harm is derivative of or contingent on the direct harms suffered by others may not recover.  See, e.g., Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 981 (9th Cir. 2008).  There is no requirement that the individual mail and wire communications proximately cause plaintiff's injury, however.  Given that one can be convicted of mail or wire fraud even if the communications did not contain a misrepresentation (Schmuck, 489 U.S. 707-08; see also U.S. v. Shipsey, 363 F.3d 962, 971-72 (9th Cir. 2004)), demanding a direct link between the use of the mails and plaintiffs' injury would exclude from RICO's reach conduct that clearly constitutes a pattern of racketeering activity.  The statute itself requires only that the injury arise "by reason of a violation of section 1962," not "by reason of the predicate acts."  According to plaintiff, defendants used the mails and wires to further their long-term fraudulent enterprise.  A reasonable fact-finder could conclude that the use of the mails and wires was part of the execution of the fraudulent scheme as conceived by defendants, and that the resulting violation of RICO § 1962 directly injured plaintiff.  Plaintiffs have adequately alleged causation under § 1964(c).

**G.  ADMIRALTY – COMMON LAW AIDING AND ABETTING FRAUD**

Plaintiffs allege that Celebrity knew of Park West's scheme to defraud passengers and assisted, aided, and abetted Park West's efforts to sell worthless or overvalued artwork during the cruises.  Defendant seeks dismissal of this claim because (1) there are no cases

recognizing a federal maritime claim for aiding and abetting fraud, (2) the claim is duplicative of the civil conspiracy claim asserted in Count VII, and (3) plaintiffs have failed to allege this claim with the particularity required by Rule 9(b).

Assuming the two-part test of <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 13 U.S. 527, 534 (1995), is satisfied, it appears that the underlying fraud claim against Park West falls within the court's admiralty jurisdiction. Defendant has not identified any characteristic or principle of an aiding and abetting claim that would preclude the application of substantive admiralty law where the underlying wrong is also subject to admiralty jurisdiction. Even if an aiding and abetting fraud claim has not yet been recognized, the "established and continuing tradition of federal common lawmaking in admiralty" suggests that dismissal is not appropriate absent some showing that the enactments of Congress or existing maritime law preclude such a claim. <u>Am. Dredging Co. v. Miller</u>, 510 U.S. 443, 455 (1994).

Defendant has not shown that the aiding and abetting claim is duplicative of the civil conspiracy claim. The aiding and abetting claim imposes liability on individuals who cannot be liable on the main fraud claim, but who had knowledge of the fraud and substantially assisted it. In contrast, a civil conspiracy claim requires evidence that the individual agreed to act in furtherance of a common objective. Because the elements of the claims differ and plaintiffs may be able to show substantial assistance even if they cannot establish an agreement, both claims may proceed.

The underlying fraud – Park West's misrepresentations regarding the value of the artwork sold – is adequately pled.[5] The other elements of the aiding and abetting claim can be alleged generally, rather than particularly.

---

[5] As discussed in Section F.1., plaintiffs have not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork they purchased.

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT  -13-

### H. UNJUST ENRICHMENT

Plaintiffs allege facts supporting all of the elements of an unjust enrichment claim under Washington law: (1) a benefit conferred, (2) knowledge of the benefit, and (3) circumstances that would make it unjust for Celebrity to retain the benefit. Young v. Young, 164 Wn.2d 477, 484 (2008).[6] Defendant argues that the transfer of funds through Park West, rather than directly from plaintiffs to defendant, bars this claim. Defendant is not, however, an incidental beneficiary of a third-party transaction from whom no restitution can be sought. In Farwest Steel Corp. v. Mainline Metal Works, Inc., 48 Wn. App. 719, 732 (1987), the court described the general rule as follows:

> The mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person. In other words, a person who has conferred a benefit upon another, by the performance of a contract with a third person, is not entitled to restitution from the other merely because of the failure of performance by the third person.

(quoting 66 Am. Jur.2d Restitution and Implied Contracts, § 16 at 960). Plaintiffs allege that Celebrity conspired to defraud its passengers and/or assisted Park West in its scheme to sell overpriced artwork. In such circumstances, defendant is not merely an innocent beneficiary of a contract breached by Park West. Plaintiffs' claim of unjust enrichment may proceed.

### I. AGENCY AND CIVIL CONSPIRACY

Plaintiffs allege that defendants were the agents and principals of each other and that they were acting within the scope of their agency when selling or assisting the sale of

---

[6] Defendant suggests that admiralty law applies to this claim, but has not analyzed whether the alleged unjust enrichment occurred on navigable waters and/or bears a significant relationship to general maritime activities. The Court has therefore applied Washington law.

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT  -14-

overpriced artwork at auction. Plaintiffs also allege that the relationship between defendants and their actions in furtherance of the fraudulent sales give rise to a plausible inference that there was an agreement or conspiracy to defraud plaintiffs.

Defendant raises choice of law as an issue, but does not provide any analysis regarding the applicability of admiralty or a particular state's law. The Court is unaware of any rule of pleading that required plaintiffs to identify the law under which this claim is asserted. Dismissal on this ground would be inappropriate.

Defendant argues that plaintiffs' factual allegations cannot support a finding that Celebrity expressly or impliedly authorized Park West to act on its behalf, especially where the Cruise Ticket Contract disclaims any agency relationship. The contractual provision is not dispositive: the fact-finder may weigh the disclaimer against other evidence that suggests the existence of an agency relationship. See Myers v. Garfield & Johnson Enters., Inc., 679 F. Supp.2d 598 (E.D. Pa. 2010); Dubret v. Holland Am. Line Westours, Inc., 25 F. Supp.2d 1151, 1153 (W.D. Wash. 1998). Although most of plaintiffs' allegations are unhelpful on this issue, plaintiffs do allege that the cruise lines allowed Park West auctioneers to identify themselves as crew members when circulating among the passengers. SAC ¶ 55. If proven, this allegation could support a finding that an agency agreement existed (actual agency) or that defendant's conduct or statements caused plaintiffs to reasonably believe that an agency relationship existed (apparent agency). Plaintiffs' claim of agency may, therefore, proceed.

For purposes of the civil conspiracy claim, the underlying fraud – Park West's misrepresentations regarding the value of the artwork sold – is adequately pled under Rule 9(b).[7] The other elements of the conspiracy claim, including the existence of an agreement, can be alleged generally, and plaintiffs have alleged facts from which one could infer the existence

---

[7] As discussed in Section F.1., plaintiffs have not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork they purchased.

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT  -15-

of an agreement.

**J. DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, *ET SEQ*.**

Plaintiffs seek a declaration that (a) Park West misrepresented the authorship, authenticity, and genuineness of the art sold to plaintiffs, and (b) Celebrity owes plaintiffs an affirmative duty to disclose material facts about the artwork sold on board the cruise ships. Defendant argues that plaintiffs' request for declaratory relief is improper because litigation has been joined and the resolution of the misrepresentation claim will obviate the need for declaratory relief. It is possible, however, that a declaration regarding the duties owed by cruise lines to their passengers could be appropriate, such that the declaratory relief would not be duplicative of the other relief sought.

To the extent plaintiffs seek injunctive relief, defendant argues that it is not in a position to provide the written assurances of authorship, authenticity, and genuineness demanded. Again, should plaintiffs succeed in establishing a duty running from the cruise lines to their passengers, some form of injunctive relief may be warranted.

For all of the foregoing reasons, the Court GRANTS Celebrity's motion to dismiss (Dkt. # 84). Because plaintiffs' claims are barred by the notice and suit limitation provisions contained in the Cruise Ticket Contracts, their claims against Celebrity are hereby dismissed in their entirety.

Dated this 25th day of June, 2010.

_/s/ Robert S. Lasnik_
Robert S. Lasnik
United States District Judge

ORDER GRANTING CELEBRITY'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT   -16-